like to  discuss is not site the Birbano case. They did not site Birbano but they did rely on those decisions to some extent, right? Yes, your honor. So to the extent that the IJ's decision helps the BIA decision I can still look at the IJ decision, not the total decision? Is that your argument? Yes, your honor. To the extent that the IJ's decision was adopted by the BIA. Okay, now this is Chen, right? And Chen, while the BIA says and so does the IJ, and this is the thing that I guess is the hardest part for you, is that he does not claim he was physically harmed, arrested or detained in China, right? Right, your honor. He did not establish substantial economic disadvantage for violating China's family planning policies, right? Correct. Never forced to undergo a sterilization?  Fined for having his first child but doesn't claim any hardship as a result of the fine? Correct, your honor. In fact, paying the fine is just judging compliance with policy rather than resistance, right? Yes, your honor. So, under substantial evidence review, isn't this case over? No, your honor. But just now you forgot to mention that the abortion, so the BIA did not take into account the abortion imposed upon the wife. The law in this circuit clearly indicates that. Now, just a minute, if I look at the BIA decision and I have it right here in front of me, it seems to me that the BIA said the spouse of a person who has undergone a forced abortion is not per se entitled to asylum but instead must establish that he was or will be persecuted and then goes through with what they have to do and cites Zhang V. Holder. Yes, your honor. Doesn't that say they took full consideration of the fact that the spouse had an abortion? That's exactly what they're talking about there. You can look at the wording of the BIA. I'm reading the BIA's decision. It indicates that the cumulative harm inflicted upon that he suffered, meaning the petitioner alone suffered, would not have been to a level of past persecution. But we're only talking about him and the harm suffered to him. And to the extent he has harm from his wife who was forced to have this abortion, there You say they didn't take that into effect, but I read you the language. They did take that effect. And then they cited Nai Yang Zhang V. Holder, which is the same kind of case. Your honor, Nai Yang Zhang V. Holder holds that for petitioner in this case, in a similar situation, must show other resistance. Well, must show other resistance? Is that all they got to show? Yes, your honor. Okay, so then we go to read that sentence. As we noted, the respondent does not claim he was physically harmed. He's not shown a substantial economic disadvantage. They went through, they tried to find extra to help him, and they couldn't find it. Your honor, you look at the IG's decision closely, and the IG denied petitioner's claim of past persecution based upon lack of other resistance, and not on the cumulative harms that inflicted upon petitioner. So the BIA actually gave the IG's decision a subtle twist, changing the basis for the IG's finding of no past persecution from the total effects of the harms to the lack of actually, the other way around, the IG found petitioner showed no past persecution for lack of other resistance. The BIA then made its decision, made the same finding of no past persecution, assuming there was other resistance. So therefore, actually, that's what the court in general says. There is no question that if this were the woman, and she had to have a forced abortion, and she has other stuff, that there'd be no question she would get the relief you seek. We don't have the woman in front of us. We have the man. And with the man, we go to the fact, you got the credibility, no question. And you got the fact that they knew that his wife had had an abortion. But looking at all of that, they go through everything else in this decision and say there's just not enough evidence. And I'm based on substantial evidence review. Well, Your Honor, I would like to inform the court that fortunately for my client, the wife did come to the United States, and then an inquiry judge did grant her application for asylum. And I also filed a motion to reopen this case before the BIA, and I approached the government to put this case on administrative judicial closure so that just pending the result of the BIA's decision. And so you asked the government to do that, and I mean, I guess we'll hear from the government, but what did they say? The government wouldn't agree. That's why the case is before this court today. I have no other questions. I mean, as to the future persecution, BIA again concluded he did not have any fear of future persecution. It was reasonable. It was primarily on the changes on the Chinese population control policies. The BIA rejected the 2018 letters because they didn't establish the government still seeks to have Chenner's wife sterilized. I'm having a tough time about why that is not substantial evidence. Well, Your Honor, for future persecution, petitioner only needs to show a well-intentioned chance that he will be targeted for persecution. And in this case, Your Honor, the two letters clearly indicates that the government is still interested in the couple. The letter was written in 2018, and it clearly indicated that the government was still targeting them for sterilization, but the BIA just disregarded that piece of evidence in reaching the decision that there is no well-intentioned chance of future persecution in this case. Yeah, I noticed that I already ran out of time. You want to reserve the remainder of your time? Oh, okay. Yes, Your Honor. Okay. May it please the Court. For the record, Kosei Ugamori again for the United States Attorney General. This petition for review should be denied for two reasons. First, the evidence does not compel the conclusion that the harms petitioner suffered in China rise to the level of persecution. And second, the evidence does not compel the conclusion that the petitioner has a reasonable possibility of forced sterilization in China, particularly given the change in birth control policies in that country. Now, with respect to past persecution, it is the case that a person whose spouse has undergone a forced abortion, that that incident could be considered as part of the analysis for the petitioner's persecution himself, but it is also settled law that the spouse's The petitioner has to show additional types of harm. Okay. If that's the truth, and I'm going to give you the same kind of questions that I gave this last guy. Because, first of all, the BIA assumes that this petitioner is credible, right? Correct, Your Honor. Then the BIA, opposite of what the IJ did, the IJ said there wasn't other resistance to the China coercive population. The BIA assumed there was other resistance, correct? Yes, Your Honor. With assuming those two, the spouse would be automatically subject, would get all the benefits she wanted, right? The spouse meaning the petitioner? No, I mean the wife. If we had a forced abortion and there was other resistance to China's policies, they'd be automatically in. She wouldn't need to show other resistance, Your Honor, just the forced abortion. But now we have other resistance. We have the fact that they assume there's other resistance. So the other... With assuming that there's other resistance, and they know they were fined, and they know that they had economic harm because he'd been deprived of his conjugal rights, why isn't that enough? Well, first and foremost, the other resistance, prong, is a separate element from whether the harms he suffered in China rise to the level of persecution. And right now, what's before this court is whether the harms he suffered rises to the level of persecution. That's why the board assumed... But we're talking about the harms he suffered. Some of it was his wife's harms and some of it was his. Right. All we've got is two harms are automatic. One, his wife had the abortion. And two, there is other resistance to China's coercive population policies. Well, so the other resistance is assumed. But what the petitioner has to show is that the other resistance was the reason why he suffered harm rising to the level of persecution. That's why you can assume other resistance. And yet, the failure to show harm in China, sufficient harm, would still mean that he's ineligible for relief. Now, in this case, perhaps it will be easier if I can compare it to Ming Xing He, for example. So in Ming Xing He versus Holder, decided by this court in 2014, there was an early marriage and early birth, just as in this case. The alien there was issued a marriage certificate afterwards, just like in this case. And when the alien had a second child, he was fined 40,000 RMBs, which is substantially more than what petitioner was fined in this case, which was 7,000. And when his wife conceived a third time, it was at that point that the child was forcibly aborted and the wife was forcibly sterilized. In this case, we have a forced abortion but not a forced sterilization. And the petitioner in Ming Xing He also, just like in this case, was never arrested, not detained, never physically harmed. And the court in that case said that the alien did not show sufficient harm in China that would compel the conclusion of harm rising to the level of persecution. Contrast that with Nanyuan Zhang versus Holder, which was decided by this court earlier in 2010. There, there was more violence that was involved. The petitioner was expelled from school. He was detained by authorities. They attacked his traditional wedding. There was much more involvement aside from just the abortion and the fine. So this case, much closer to Ming Xing He, the evidence simply does not compel the conclusion that petitioner's non-interaction with family planning policies meant that he suffered persecution in China. The immigration judge was of the view that petitioner could have mitigated the harm from his wife's forced abortion because, quote, you could divorce her and find a younger woman and have a son. And I appreciate the footnote in your brief that you're not defending that line of reasoning. But how are we to consider the other rationales that offered by the IJ while ignoring the possibility that they were colored by that line of thinking? So first and foremost, there was never any due process bias claim that was raised in this case. So it's too late for the petitioner to raise it. Now he doesn't raise it before this court either. So it's both unexhausted and waived. And second off, the immigration judge, she made that statement during the hearing, but she didn't repeat it in her decision. In her decision, she accepts the petitioner's testimony that he cannot divorce his wife and, you know, have a child with somebody else. She doesn't suggest in the decision at all that he can marry somebody younger and have a son with that person. So the error is not repeated in the immigration judge's decision itself and certainly not repeated in the board's decision. I mean, I take the point that that precise error is not repeated. We'll be exploring with some of your colleagues later in this week somewhat similar errors from the same IJ. But that's for another day, I guess. So as far as past persecution is concerned, the evidence does not compel the conclusion. And I think, again, it's important to note, as Judge Smith has noted, the importance of the standard review in this case. Well, I appreciate the standard review. The problem that I'm having here is it seems to me when I read the BIA decision that the BIA focuses on his problem or his personal suffering when there's more than his personal suffering that is involved in this. There's his wife's suffering. And when I read the long paragraph on page two, it assumes to me that they're really looking at what he personally suffered rather than focusing in on the whole suffering that took place, which is his wife suffered. They both fought the policies. They paid the fine. He wasn't able to stay and have a son with his wife. He had to escape. It seems to me that that's a lot of suffering, and I'm not sure they weighed all of that. That's why I ask you the questions.  Well, as the board states, it does recognize that the spouse did undergo a forced abortion. It also specifically said, considered cumulatively, the harms he alleged does not rise to the level of persecution, and it's repeated at the bottom of that paragraph, considered in the aggregate does not rise to the level of persecution. So the board does consider the entire record, and it should also be noted that the board which adopted this part of the immigration judge's analysis, the immigration judge herself also was very meticulous with her summary of the facts. With respect to future persecution, the petitioner, the evidence doesn't compel the conclusion that there's a reasonable possibility that it would be forcibly sterilized in China. I think one of the main factors that weighs against them in this case is the change in policy itself. Previously, the petitioner had two unauthorized births, but that was before the change in policy. Currently, those two births would not be a violation of the family planning policy. But doesn't the country conditions report in which they're relying say that it's subject to local, additional local regulations? So there is variance, yes. So the 2018 country reports, for example, this is at page 344 of their administrative record, says that there are less frequent instances of coercive population, instances of coercive population control. Did the board consider that in talking about it? I mean, I think it says the first part of what you'd said, the government now permits couples to apply for permission for a third child, suggesting that the respondent's wife could seek to have another child without violating government policy. But did it need to take account of the fact that the local regulations could change that? Well, no, because there's no compelling evidence here. Well, first and foremost. I mean, I think a lot of the, my understanding is much of the future persecution case is predicated on what the local authorities are doing rather than what the national authorities are doing. Right, and it should be noted that in 2012, when the board initially dismissed this appeal, at that point prior to the change in policy, he still didn't have a likelihood of future persecution. And it should be noted that the 2010 Department of State Department reports at the time said that forced sterilizations are prohibited under the law, one. Two is that there were reports, incidents of family planning officials nonetheless engaging in forced sterilizations because they felt intense pressure to comply with quotas. Now, if you look at the 2018 reports, it says there's first less frequent instances of forced sterilizations than before, and that the pressure to comply, the intense pressure that was previously the case is not the case anymore, obviously, because there's been a change in policy. Now, petitioners permitted to have two children, possibly three. And the country conditions evidence, at the very least, doesn't compel the conclusion in his favor. And the 2018 letters that the petitioners rely on, that the petitioner relies on, also does not compel the conclusion in his favor. Again, the standard view being key here. What does the government make of his wife's being granted asylum and the request that maybe we might stand back to let the petitioner reopen? Well, that's the case. He was granted derivative asylee status, so at this time ICE has no plans to remove him. He's not removable from the United States. But that being the case, if the court is suggesting that the case is moot, the government's position is that it is not because a derivative asylee with a final order of removal is not the same thing as a person who's granted asylum in removal proceedings. Down the line, when petitioner may, might become eligible for adjustment of status after having been a refugee for one year, he would be encumbered from doing so if he has a final order of removal, where he wouldn't be similarly so encumbered if he had been granted asylum in removal proceedings. So the government does not think that the case is moot just because the petitioner is an asylee. I think he still has an interest in litigating this case. And I, well, I can't speak for Petitioner's Council, but I don't think any party has suggested that this petition for review is moot. Going back to the question of likelihood of future persecution, what are we to make of the zoning issues relating to his house? I mean, the board said that, you know, refusal to process home renovation paperwork does not constitute persecution, which seems obviously correct. But I take the point that he's making to be not that this is itself persecution, but that this shows that the local authorities are still focused on me, still unhappy with me, and therefore, given the sort of local variation that Judge Johnstone was referring to, like, therefore still might make me a target for sterilization. And I didn't see that the board really addressed it in those terms. So what's your answer to that? Well, the board specifically looked at the letters, and it said that it didn't establish that they would forcibly sterilize him. So first off, the 2018 letters, what they said in sum and substance, were that the wife wanted to renovate the house, so she asked the cousin to go to the authorities to get the proper paperwork. And the authorities responded by saying that they're not going to issue any paperwork unless you present evidence that the petitioner has been sterilized. But asking for evidence that somebody has been sterilized is not compelling evidence, Your Honor, that they're going to go out, capture him, apprehend him, you know, arrest him, and then do a forcible sterilization, which, by the way, has been illegal. It comes in the idea that he left China thinking that that was going to happen to his wife. He left China to make sure that this was happening. And to just say, well, it's been two decades since we had the initial threat, seems like they've overlooked the idea that that local board was still anxious in 2018 to make sure that something was happening about this. And I guess I'm trying to figure out, does that really say that we think they've taken all of that into consideration, or should we send it back to make sure they did? The board expressly refers to the 2018 letters, Your Honor. I know. They say something about it, but then they try to say, well, but there's no evidence of recent threats, and there's another decision, and an IJ decision, but there's no question China still sterilizes people, and there's no question that this 2018 letter says it still has interest in doing something with him. Well, they're interested in wanting evidence, but they're not interested in actually going out and forcibly sterilizing. I grant that is a fair point, Your Honor, and a different immigration judge might have found differently, but review before this court is substantial evidence, and the 2018 letters simply do not compel the singular conclusion, as it must for this court to reverse the agency's factual finding. It does not compel the singular conclusion that the petitioner has a reasonable possibility of being forcibly sterilized in China. For those reasons, the government asks that this petition for review be denied. Thank you, counsel. Thank you. Rebel? Yes, Your Honor, regarding the future prosecution, as I said that the petitioner only needs to show one in 10 chance, and just now Judge Johnston mentioned about the local regulation, the permission of a third child is subjected to a local regulation. In the wife's letter, the wife did indicate how the local officials would respond in the year 2018, and in the letter she clearly indicated that the officials indicated to the cousin who applied for the permit, saying that the sterilization procedure must be performed after having two children. And also, you know, there's a personal vendetta involved here, because the reason why after all these years the local officials are still interested in them is because their failure to comply with their demand for sterilization resulted in the deduction of bonus. The biggest problem I think comes for me for your argument is basically this. They had all the facts in front of them. It isn't as if they didn't have the facts. It isn't as if they didn't put all the facts in their opinion. It isn't as if they didn't consider all the facts. And in order for me to undo what they did, I'm just substituting my judgment of those facts for something that they did, and that's not the standard of review that I have here. So tell me how I'm supposed to get there to help you. The bottom line is I have all those facts. I've given them to him. I've asked him the questions, but the bottom line is if they have all those facts in their opinion and they think about them and they give consideration to them, if I, I mean, I was a district judge once, and I hate the Ninth Circuit telling me what to do when I've looked at the facts and circumstances because that's not the standard of review. And now you're telling me I ought to put a new standard of review on this and do it all again. The standard of review is substantial evidence. I know. That's why I put it for you. The BIA ignoring the regular evidence in reaching its decision, so the BIA necessarily failed the substantial evidence by ignoring the evidence in record that supports respondents' claim. In this case, because the BIA relied upon the country report, showing that the government is not interested in petitioner after all these years because of the change of policy. And in this case, petitioner submitted evidence to show that the government, the local officials are still interested in him because, first of all, the local policy hasn't changed regarding what would happen to a couple after having two children. And secondly, there's a personal vendetta involved here because the petitioner hiding all these years and the petitioner's non-compliance with their demand for sterilization led them to lose a bonus for the entire year of 2005. Mr. Lee, what is present in this case that wasn't? How would you distinguish the he case? So there are cases we've talked before about. We have the Jiang case that got across the line for persecution and then the he case. How is this case distinguishable from the he case where we found that there was substantial evidence of no past persecution? In he case, the case is exclusively past persecution because the wife had already been sterilized. But in this case, the wife was hiding from the government for over almost two decades to avoid the sterilization. So there is a future persecution involved here. And also, that's the focus of petitioner's claim. Actually, for the first time, the court demanded, actually the government asked the court to remand this case to the BIA just for the BIA to determine whether or not there's a future persecution. And the idea in this case, knowing fully well that if petitioner was assumed to be credible, then petitioner would have established his eligibility for asylum. That's why the IJ just focused on the credibility issue for the first time and also the second time. So therefore, I would ask the court to reverse the BIA's decision and send this case back to, again, last time to address the issue of future persecution and also for the BIA to consider the cumulative effects of all the harms to both petitioner and as well as his wife for determination of past persecution. Thank you, Your Honor. Thank you, counsel. Thank both counsel for their helpful arguments, and the case is submitted.
judges: SMITH, MILLER, JOHNSTONE